Good morning, Your Honors. My name is James Todd Bennett. I represent the petitioner, Dong Nguyen. I'd like to reserve two minutes for rebuttal. That's fine, but watch your own time. Before the Court is essentially a motion to reopen on review under former Section 1252 B.C. 4 under the transitional rules. There's two of the grounds for review are in front of the Court. Primary one is the failure to appear issue and the reasons therefore, and whether that was supported by, met the evidentiary standard, or whether there was, under the abuse of discretion standard, whether or not this was clearly an arbitrary or capricious or contrary to law decision to take this single declaration and disregard it in the way that it was without making the finding that it was inherently unbelievable. Second issue is whether there's clear and convincing evidence that was erased in the administrative brief after the decision and has been re-raised by respondents to find that the BIA's finding that you cannot review that issue as a matter of law is contrary to the statute provisions of 1252 B.C. 4. In other words, they made a I understand the clear and convincing evidence part. Why would we have evidence about an illegal ruling? I'm sorry. The second issue being the clear and convincing evidence issue. And as I understand the BIA's pure curiam decision, they are saying that this issue is untimely because it's a direct appeal on an issue that should have been appealed directly. There's no grounds for that. The statute requires a motion to reopen, so clearly it's an error of law. In the reply brief, excuse me, in the brief of respondents, they go on to say that it's not, it's a harmless error because there is clear and convincing and unequivocal evidence to support the finding of deportability. I'd like to address that issue first and then go on to the failure to appear issue. As I've noted, the issue at stake is not a harmless error by the BIA saying there's no jurisdiction to review that issue. Mr. Nguyen was in front of the Court with a motion to terminate by his counsel in the administrative proceeding. That motion was denied, but the judge set it for an evidentiary hearing. So there's the first issue that makes it hardly a harmless error. Does he get to his evidentiary hearing to prove that these are not two crimes of moral turpitude? Because we have a single charge in front of the immigration judge and on appeal, and that's 241a to a little, two little i's, which is two crimes of moral turpitude that do not arise out of a single scheme, and that was the evidentiary issue. Was these two, were these two convictions a single scheme because they involve the same modus operandi? Secondly, it's not a harmless error because even if he was found deportable, he'd be eligible for relief under former Section 212C, which is a discretionary waiver since he was originally admitted as an alien, excuse me, as a lawful permanent resident back in 1978, and these offenses did not occur until 1994. On its face, I think the decision is an error, and I believe that's conceded by Respondents in their brief and their concluding section of the brief. However, the Respondents go on to say that it's a harmless error because there was clear and convincing evidence. Briefly, that clear and convincing evidence shows that it was an error because they applied a time limit that doesn't apply to this. I'm sorry, Your Honor? It was an error because the BIA applied a time limit that doesn't apply under these circumstances. Is that why it was an error? Yeah, they just said we have no jurisdiction to review that issue. It should have been raised on direct appeal, whereas it's clearly outlined as an issue under the statute. When they say it's a harmless error, excuse me, strike that. We've got two. Well, there was no direct appeal because this was an in absentia order. It would only be dealt with by a motion to reopen. Isn't that what happened? Yes, that's all. His only remedy is to make a motion to reopen. He can't direct appeal. We've got two convictions, same statute. Well, of course, that goes to the underlying merits of the whole claim, of your whole contention. The issue, as I see it, on reopening was whether or not he had any excuse for having stayed away from the hearing in the first instance. You're arguing what he would have gotten to argue had he been permitted to reopen. No, but we're not there yet. It is a ground, and it is a ground to reopen if the government doesn't approve it. All right. Let's say it's a ground for reopening. Now, he cannot just ignore the hearing and say I want to do it on some occasion after I reopen. Don't we have to get to the issue of whether or not he was justified or excused or there was an abuse of discretion in failing to grant him the opportunity to be heard on what you claim is the merit? Yes, Your Honor. The turning tap to that issue of the failure to appear, there's some confusion in the Respondent's brief. They seem to confuse 252bc3a with the b subsection. They're two separate sections, and there are two ways to proceed on this. Under the a section, that's well litigated in this circuit, Sellis being, I think, the last decision on the issue where you do have to show corroboration because simply making a claim of extraordinary circumstances why you didn't show up is needs to be corroborated because there has to be a basis for making the finding that, oh, yes, in fact, you had extraordinary circumstances. Under the b section, though, there's two grounds, either no notice or you were in Federal or State custody. And in this particular proceeding, the only evidence in front of the Court is a single declaration by Mr. Nguyen. Counsel, the motion to reopen counsel, filed a supporting declaration. However, that was filed on the same day that the decision was issued and apparently not considered by the Court when it made its decision. The single declaration, at no point did the immigration say it's inherently unbelievable. The finding of the judge was essentially that, essentially, she basically found that there's no State custody based on the declaration. She couldn't find State custody, meaning, I'm assuming, or one could assume, meaning that parole is not State custody. On the other hand, she goes on to address the extraordinary circumstances, which was also raised as a grounds, but I think it's a secondary grounds, the primary grounds being being in State custody as being the reason why he didn't appear under the b subsection. Well, whether parole is State custody is a legal question that we can just decide. Yes. But the, and that doesn't have anything to do with corroboration. The corroboration problem is, he said he went to a voluntary testing program and was detained, which I take, took to mean taken into custody, not just was laid late. And that's where they wanted corroboration, because if that were true, then the applicant, then the statute would apply. Right? True. But at no point does either the Board of Immigration Appeals or the immigration judge ever make a finding that this declaration is inherently unbelievable. Well, I think that I take it to mean that they found that it didn't say anything. He's on parole. Right? Everybody knows he's on parole. True. I go to voluntary, voluntary drug testing. Voluntary drug testing. I presume, for all I know, you can stay away if you want to stay away. You can go to your hearing instead of going to voluntary drug testing. Then he goes to voluntary drug testing instead of to his hearing, and he says he is detained. Well, now, what does being detained while you're being tested mean? That's, that, does it mean that the doctor took a hold of your arm or the nurse took your arm or that somebody put a strap around your arm to take your blood pressure? Does that mean you're detained? What does all of this mean? And I take it to say that in reading it, somebody concluded it didn't say anything. Now, is there more to it than that? Yes, Your Honor. First of all, his presence is voluntary. But once he's detained, it's involuntary. Well, what does detained mean? I can claim that I am detained by the nurse while she's taking my pulse. I don't know what it means. Or I can say being detained, saying you're being detained in this context, doesn't tell us anything. Does anybody know? Does this record tell us that it's any more than a nurse taking a hold of this guy's arm while she's taking some blood or something? What does it mean? Well, one of the problems, Your Honor. My question is, what does it mean? I was told the problem. My question is, what does this mean? And I take it that the readers of this affidavit said for this presentation, it doesn't mean anything. Well, as a matter of law, if he's a parolee under the laws of the State of California, he can be taken into detention at any time. That would excuse him from ever showing up at any hearing that was ever set by the IJ, right? Don't have to show up. I'm on parole. Well, under the statute, it would allow him to. No, that's not my point, Your Honor. That's not your point. I have a different question, which is related to Judge Leiby's questions, which is there is a serious ambiguity about this declaration. It could even mean I was made late. It's not even clear that he was taken into custody. Because the word detained could mean they took too long. So the question is, as I recollect, the IJ said, you know, if you come up with the information, I don't know if he said you can file a motion to reopen or we'll wait for it or so on. I mean, there was an attempt. There was some delay given in order to get some documents or some declaration from somebody, and nothing ever showed up. Yes. The Declaration of Counsel, which was. What did the Declaration of Counsel say? I'm sorry, Your Honor? I don't remember the Declaration of Counsel being very illuminating. That was filed on the 16th. Let me get the page number. But I did read it. It didn't seem all that illuminating either in terms of what actually happened. It's 35. Okay. And it said that it will take some while to produce the records, right? Yeah. And the problem. But to this day, we don't have the records. There was never a motion to reopen filed or anything else. We just have never seen any record. Well, the problem was the decisions made. The context of this motion, unfortunately, was on December 7th. He had a surrender date. So things are moving really fast. He hires counsel on the 4th. The motion is slapped together and filed before the 7th. In advance, I guess it was filed on the 4th. And to get the automatic stay to preclude them from just deporting him outright. Then at that point, the government responds on the 8th. And the judge issues a decision on the 16th, while Respondent is still scrambling around trying to get the records out of the CDC, because by that time, by counsel's declaration, the records are already archived in the CDC, and there's going to be a two to three-week delay. That declaration was filed. Do you have 90 days to file a motion to reopen from this hearing, from this decision or not? Because it's a motion to reopen, you don't get a second motion to reopen. No motion to reopen was filed with the BIA. Right. But the issue being here is, is the declaration sufficient? Is the evidence in front of the courts sufficient? I understand that. I'm saying that it's somewhat informative. The declaration is at least extremely ambiguous. So the question – and they were specifically advised to get something else. And they didn't get something – you didn't get something else. And I'm trying to find out, was there some procedural barrier to ever introducing into the record anything else, or it wasn't there? I understand the notion that you don't need corroboration. You don't if you have a document that is on itself sufficient. But the question is whether this document on its face is sufficient, given its ambiguities. One of the problems is we don't even know what's in the CDC file. I mean, it's not part of the record. Exactly. That's the problem. Got the answer. Right. Never got filed. Never got received. Never responded. That was one of the big problems. Supposing, without knowing a thing about this, I or anybody else was to boldly assert that this gentleman, while on probation or parole, chose to go and have himself tested in the parole process at a time when he knew he was to be someplace at his hearing, and that when he went there, it took him a half hour to get that done. And during that half hour, the time elapsed when he should have been appearing at his hearing. And he labels that as being detained. And nothing more than that happened. Is there anything in this record that would contradict such a bold assertion? Based on his declaration alone, he essentially says he was detained and unable to appear. If fairly read, I believe that would say that he was still in detention at time of hearing. But why does detained in that context simply mean I went there and it took longer than I thought it would? So I was detained. And that's the way people ordinarily use the word detained. What happened to you? I was detained. That doesn't mean you were in custody. It means it took too long. All right. I think your time is up. Thank you very much for your argument. No, thank you, Your Honor. It's a problematic case. Good morning, Your Honors. Thomas Ragland for the Respondent. Your Honors, before I begin my argument, let me just address the last point that we were discussing. I would just point out if you examine the record in this case, the Board of Immigration Appeals issued its decision dismissing Petitioner's appeal on December 4th of 2002. And as Your Honor noted, and I'll turn to it in the record, the immigration judge's decision On page 39 through 41, at the final part of the decision, the immigration judge specifically invites the petitioner if he's able to obtain more evidence to move to file a motion to reconsider the proceedings, which could have happened within 30 days after this hearing, which would have been prior to actually the date the petitioner filed the petition for review in this case. The petitioner could also have filed within 90 days a motion to reopen if he had obtained new evidence of the custody. Neither of those things occurred. So there was the opportunity to move to reopen or reconsider. And the immigration judge invited that. As Your Honors have pointed out, we don't have any evidence of what detention means in this case. Your Honors, I would submit that the motion to reopen is decided strictly on the papers. They never had a hearing on the motion to reopen. The motion to reopen is decided, yes, on the papers, Your Honor. You mean before the immigration judge? Wouldn't it make more sense if you're having trouble understanding what he's saying to have a hearing and saying what he means? Well, Your Honor, under the statute where the immigration judge conducts a hearing in absentia, and then you have to, and then you're required to submit evidence showing one of the standards for reopening, that providing evidence that's sufficient to establish that there are grounds for reopening is the first hurdle you have to reach. And so if the petitioner, because the issue in this case is a lack of evidence to meet the burden of showing that he was in custody and what that custody means, what that detention means, it would make sense that if he were to submit evidence from the CDC or some other evidence, here's what I mean by I was detained, here's what I mean by custody, and here's evidence that I was within the meaning of the statute in state custody and unable to appear through no fault of my own. But the evidence have just been a more specific declaration from himself? If the... The answer has to be yes, right? I don't, I wouldn't know without being able to see with the declaration, but it would have to establish that the custody was through no fault of his own. Now, Your Honor, suppose his hearing was scheduled for 10 a.m. on this day. Yeah, if he had an appointment at 9 a.m. in the ordinary course, he would have been done at 9.30, but something turned up at this testing and they ended up putting him in shackles and taking him off to county jail, and he had a declaration to that effect, I presume that would have been enough. Well, Your Honor, also if he had shown that perhaps he was required to show up on that morning, there's no evidence that he could not have. If he were required to show up, that he couldn't have rescheduled the testing, whether he chose to do the testing that day just because it was a convenient day for him to go, whether he also failed to notify the court, and if he perhaps had notified the court and said, look, I came for testing today, I was required to show up as a condition of my parole. During the testing, I came up positive, and so they're holding me, and so I'm unable to appear. Even if he notified the court, not even that day, but as soon as he was released from detention or within a day or two later. Well, there's no requirement that he notify the court. There is a requirement that he meet the circumstances. That's right, Your Honor. There's no requirement that he notify the court, but as this Court noted in Celis-Castellano, it goes to the issue of whether there's a reasonable explanation for failing to appear and whether the circumstances were beyond his control. And what the Court said in Celis was that it tends to undermine an exceptional circumstances claim if the petitioner does not make the affirmative effort to notify the court that they're not going to be able to appear or, after failing to appear, the reason why they were unable to appear. And all of this goes to the purpose of the statute, which was to try to bring proceedings to closure, to move along with these proceedings, and so that was the purpose of the requirements. In this case, the government would submit that the petitioner has simply not shown that the Board abused its discretion, which is the standard in this case, abused its discretion by finding that he simply failed to demonstrate that he was in State custody and unable to appear on the morning of September 1, 1998, through no fault of his own, or the other ground, that he showed that there were exceptional circumstances for his failure to appear. And again, as I would note, as the Court said in Celis-Castellano and as I noted in my brief in this case, Celis points to a number of instances which would aid an exceptional circumstances claim, attempting to contact the court, providing corroboration, and that failure to do those things. In Celis, in fact, the petitioner did submit medical evidence, but this Court found that even that corroborative evidence wasn't sufficient to show that the illness that he had alleged, which was an asthma attack, was severe enough to prevent him from appearing at the hearing. Your Honors, I can also speak to the second question, which was the deportability issue. What issue? I'm sorry? The deportability issue, which Petitioner's Counsel raised initially. In my brief, I noted that apparently the Board did make an error. As Your Honors have noted, in absentia proceedings after the Board of Immigration – after the immigration judge conducts an absentia hearing, the only course for a respondent is to move to reopen and to rescind that in absentia order. There is no direct appeal, and the matter of Gonzalez-Lopez and other cases have held that. And so where in the Board's decision they stated that his motion would have been untimely because he should have taken a direct appeal, that was an error. But the underlying issue is, was deportability demonstrated by clear, unequivocal, and – I'm sorry – by – I'm forgetting the standard – by clear, convincing, and unequivocal evidence. In this case, the evidence that we had was two certified conviction records of the convictions which went to the charge of deportability, which was that he had been convicted of two crimes involving moral perversity, not arising out of the same ground. The Government would submit that the evidence submitted was clear, convincing, and unequivocal. And so the issue of deportability, the fact that the Board misstated the law, does not invalidate the legitimate finding of deportability in this case. Thank you. Thank you, Your Honor. Just briefly, Your Honor. I'm not sure where we are in time here. I'm sorry? Negative time. I will – I think you're finished with your time. Thank you very much. I thought I reserved two minutes. But you finished it. We're five minutes over. Thank you very much. Okay. We will take a break and come back to do two more cases this morning. Thank you very much. Thank you.
judges: B Fletcher, Leavy, Berzon